C. H. ALBERS ET AL., Appellants, *v.* COMMERCIAL BANK, Respondent.

*May 11, 1880.*

1. Where a check has been paid by the bank on which it was drawn, with funds of the drawer, the bank cannot, at the drawer's request but without the holder's consent, by any act of its own, effect a rescission, and imperil the rights of third parties who had acted upon the faith of a good check.
2. Proof of a custom where mistakes are made can avail nothing in a case where there is no proof of a mistake.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

MARSHALL & BARCLAY, for the appellants: The drawer of a check may countermand it. — *Chase* v. *Alexander*, 6 Mo. App. 510. The question of the custom or usage in such cases should not have been ignored in the instructions. — *Barber* v. *Dispatch Co.*, 3 Mo. App. 377; *Meyer* v. *Railroad*, 45 Mo. 137.

NOBLE & ORRICK, for the respondent: The giving of a check is an appropriation *pro tanto* of the fund of the drawer in possession of the drawee, and the latter may maintain an action thereon against the drawer. — *McGrade* v. *German Savings Instn.*, 4 Mo. App. 339; *Roberts* v. *Corbin*, 26 Iowa, 321; *Munn* v. *Burch*, 25 Ill. 35; *Lester* v. *Givers*, 8 Bush, 357.

HAYDEN, J., delivered the opinion of the court.

The plaintiffs allege that on the nineteenth day of December, 1876, they had to their credit, and subject to check, with the defendant, $300, which the defendant refused to pay. The answer was a denial. The question is, whether the defendant is liable for a check of $2,602.09, of date · September 23, 1876, drawn by the plaintiffs on the defendant, in favor of Carruthers & Co. This check was given by the plaintiffs to Carruthers & Co., partly in payment for merchandise, but, to the extent of about $1,000, by way of loan, Carruthers & Co. giving their check on Bartholow, Lewis & Co., their bankers, for the loan, to the plaintiffs. On September 22d, Carruthers & Co. deposited the check given by the plaintiffs, with Bartholow, Lewis & Co., thereby getting credit to that amount. On September 23d, Carruthers & Co. failed. On that day, between one and two o'clock, the plaintiffs went to the defendant and requested its cashier to return to Bartholow, Lewis & Co., as not "good," the check of $2,062.09, which on the previous day they had given to Carruthers & Co., and which in the meantime had been presented by its holder, Bartholow, Lewis & Co., who, in due course, had received credit upon it at the clearing-house. Having thus passed through the clearing-house, the check was, shortly after ten o'clock on September 23d, presented to the defendant, when, the account of the plaintiffs being examined and the check found "good," the check was cancelled as a paid check, and its amount charged on the defendant's books to the plaintiffs. This had been done before the request of the plaintiffs was made that the check be returned as an unpaid check; but upon this request, the defendant's cashier said he would send the check back. Under his direction the cancelled check was taken from the paid file, marked "cancelled by mistake," returned to Bartholow, Lewis & Co., and the entry on the defendant's books erased by which the amount was charged to the plaintiffs. The cashier of Bartholow, Lewis & Co. immediately notified the defendant that they

would not take the check back, but it appears that the check remained in their possession, and that the balances between the two banks were adjusted on that basis, since the defendant received from Bartholow, Lewis & Co. the equivalent of the check. There is nothing to show that Bartholow, Lewis & Co. ever agreed with the defendant that the check should be considered as an unpaid check, though there is evidence that they were perplexed by the singular conduct of the defendant, and were not well advised as to their legal rights. They, however, insisted that the check was a paid check before the arbitration committee of the clearing-house, which so decided. Upon this, the defendent paid the amount of the check to Bartholow, Lewis & Co., and recharged it on the defendant's books to the plaintiffs. The jury found for the defendants, and there was judgment accordingly.

It is not easy to understand the plaintiffs' theory in this case. It seems to be contended that there was a rescission, though how there could be a rescission of the payment of the check, in view of what preceded, and of the fact that Bartholow, Lewis & Co., whose rights were directly involved, had advanced their money on the faith of a check of the plaintiffs which was perfectly good at the time of such advance, the plaintiffs omit to explain. As a matter of course, the defendant had no right to retract. It had paid the check and cancelled it, and it could not afterwards imperil the rights of third parties, who had acted on the faith of a good check, by attempting to unpay it. The plaintiffs gave the check to Carruthers & Co., receiving the check of the latter in exchange for the loan, and took the risk of their failure. The loss happened, the check given by Carruthers & Co. being thrown out, and when it happened, it was the loss of the plaintiffs. The argument seems to be that by going through certain forms, such as taking the paid check from the file and handing it back to Bartholow, Lewis & Co., what had been done could be undone, and the loss shifted from those who had, by their

contract, incurred the responsibility, to the shoulders of somebody who had incurred none.

It is too obvious for exposition that it was not open to the defendant to do anything except to pay the check when it did pay it. It appears that, to oblige the plaintiffs and in ignorance of its duties, the defendant did certain acts which it did not adhere to, but soon retracted. So, the other bank, in ignorance of its rights, took certain unnecessary steps, which it afterwards retraced, these very steps, however, indicating its resolve to compel the plaintiffs to observe their legal obligations. As the law is not altered by the mistakes which persons make in regard to it, these acts of the banks did not affect their legal rights.

It is said that the instruction given by the court ignored evidence that there was a custom among banks in St. Louis by which a bank has a right to return a check up to two o'clock P. M. of the day on which it is presented through the clearing-house. Even if evidence of custom was competent here, no custom was proved. The questions assume a custom, but the legal requisites of proof are nowhere complied with. What proof there is, appears from the context to relate to a habit of returning checks in case of mistake. Here was no mistake; nor are the facts to be got rid of by calling them a mistake.

There is nothing in the point that payment was not pleaded. As the petition is framed, payment of the check is not the defence, but only a means of proving it. The instruction of the court was not objectionable as selecting particular facts to the exclusion of others. If the record of the suit of Bartholow, Lewis & Co. against the plaintiffs had been introduced, the evidence would not have advanced the plaintiffs' case; but it was properly excluded, as it was irrelevant. What has been said above, answers other objections.

The judgment is affirmed. Judge Bakewell concurs; Judge Lewis is absent.